UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
DEBORAH F. SHIPMAN,                 )
                                    )
        Plaintiff,               )
                                    )
        v.                       )    Civil Action No. 09-0567 (RWR)
                                    )
THOMAS JAMES VILSACK,               )
                                    )
                                    )
        Defendant.               )
_____)

MEMORANDUM OPINION

In this action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., plaintiff claims that while employed at the Department of Agriculture, she was harassed and discriminated against because of her gender and age and was retaliated against because of her equal employment opportunity ("EEO") activity. Defendant moves to dismiss under Rule 12(b)(1) and Rule (b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56 [Dkt. No. 8]. Upon consideration of the parties' submissions and the entire record, defendant's motion will be granted.

BACKGROUND

Plaintiff had been employed with the Department since 1987 when, in 2005, she became a GS-7 Public Affairs Assistant in the Grain Inspection, Packers and Stockyards Administration under the supervision of William Crutchfield. Def.'s Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Facts") ¶ 1; Pl.'s Response to Statement of Material Facts [Dkt. No. 11] ("Pl.'s Resp.") ¶ 1. "Beginning around 2005," defendant conducted a mandatory

study "to 'determine the overall feasibility of successfully competing activities with the private sector under an [Office of Management and Budget] A-76 cost comparison.' "  Plaintiff's position was identified as "one that could be considered a candidate for competitive sourcing," Def.'s Facts ¶ 2, and was one of 25 positions "listed as appropriate for removal[.]" *Id*. ¶ 3; Def.'s Reply [Dkt. No. 15] at 4, n.1 (correcting number of positions).  In response to an agency reorganization in late 2005 unrelated to the A-76 study, Def.'s Facts ¶ 4, Crutchfield "asked all of his employees if they planned to retire or find other jobs."  Def.'s Facts ¶ 7; *see* Pl.'s Resp. ¶ 3 ("During 2005-06, Mr. Crutchfield repeatedly asked me several times about when I am going to retire.").

In 2006, the Public Affairs office was "disbanded"  as part of the reorganization and, in September 2006, plaintiff  became the Administrative Assistant to Crutchfield.  Def.'s Facts ¶¶ 4-5.  Meanwhile, on March 22, 2006, plaintiff filed a grievance charging discrimination, retaliation for previous EEO activity, harassment and "deformation [sic] of character."  Def.'s Mot. to Dismiss, Ex. 1.[1]  Defendant investigated whether plaintiff was subjected to "discriminatory harassment" and reprisal

> when . . . 1.  she received a memo identifying her as an A-76 study employee; 2.  she was reassigned from the position of Public Affairs Assistant to an Administrative Assistant; 3.  she was denied training; 4.  she received repeated changes to her position description; 5.  her duties decreased; and 6.  her supervisor constantly asked her about retirement.

Def.'s Attachment [Dkt. 8-8] (Report of Investigation ("ROI")).  On February 13, 2009, the Equal Employment Opportunity Commission ("EEOC") affirmed the agency's  ruling against plaintiff and notified her of her right to sue.  Compl. Attachment.  Plaintiff filed this action on March 26, 2009.

---

[1] Defendant's exhibits are the original exhibits to the Report of Investigation prepared during the administrative proceedings.

DISCUSSION

1. Motion to Dismiss

Defendant seeks dismissal of any unexhausted claims under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. *See* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mem.") at 4, n.1 (citing rulings dismissing unexhausted claims under Rule 12(b)(1) and Rule 12(b)(6)). "Because the exhaustion requirement [under Title VII], though mandatory, is not jurisdictional," *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009), defendant's motion to dismiss will be considered under Rule 12(b)(6).

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995). "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Id*. (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (omitting other citations)). Plaintiff has not refuted that she did not exhaust certain claims and she has not provided any argument for equitable tolling.[2] *See Hewitt v. Rice*, 560 F. Supp. 2d 61, 64 (D.D.C. 2008) ("The limitations period for filing an administrative charge of discrimination is subject to equitable tolling in the unusual instance where justice requires that the plaintiff be spared the consequences of failing to meet the deadline imposed.") (citations

---

[2] Some of what defendant has identified as unexhausted "claims," Def.'s Mem. at 9, appear to be factual background supporting the reprisal claim. *See* Compl. at 2, 6 (stating that some of the alleged misconduct was the subject of her "previous complaint in 2004-2005"). Plaintiff does not dispute that this action is confined to the issues presented in the 2006 grievance. *See* Compl. at 1-2 (listing "claims [that] were accepted by the Department for investigation"); and generally Pl.'s Response to Motion to Dismiss or, in the Alternative for Summary Judgment [Dkt. No. 11].

omitted). Therefore, any unexhausted claims – *i.e.*, those beyond the issue of "[w]hether the agency subjected the Complainant to discriminatory harassment based on sex (female), age (54), and reprisal (prior EEO activity)," ROI at 1, – are dismissed under Rule 12(b)(6). *See Hairston v. Tapella*, 664 F. Supp. 2d 106, 110 (D.D.C. 2009) (stating in a Title VII action that "motions to dismiss for failure to exhaust administrative remedies are . . . appropriately analyzed under Rule 12(b)(6)") (quoting *Hopkins v. Whipple*, 630 F. Supp. 2d 33, 40 (D.D.C. 2009)) (other citations omitted).

2. Motion for Summary Judgment

Defendant argues that plaintiff has not stated a harassment claim under Title VII. Given the reliance on matters beyond the pleadings, this claim is analyzed under the standards for summary judgment. On a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment may be granted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson*, 477 U.S. at 248. A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id*., as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id*. at 255.

4

The nonmoving party, however, must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id*. at 587 (emphasis omitted). In the end, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*A. Hostile Work Environment*

Title VII forbids employers from creating a workplace so abusive as to affect a "'term, condition, or privilege' of employment."[3] *Davis v. Coastal Intern. Sec. Inc.*, 275 F.3d 1119, 1122 (D.C. Cir. 2002) (citation omitted); *see Pennsylvania State Police v. Suders*, 542 U.S. 129, 146 (2004)) (explaining when "atmosphere of sexual harassment or hostility [is] actionable"). To establish a prima facie case of a hostile work environment, a plaintiff must show that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her race or gender; (4) the harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile, or offensive working environment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it. *Roberson v. Snow*, 404 F. Supp. 2d 79, 96-97 (D.D.C. 2005). "A hostile work environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

---

[3] "An ADEA cause of action for hostile work environment has not yet been recognized in this Circuit." *Sewell v. Chao,* 532 F. Supp. 2d 126, 142 (D.D.C. 2008). Even if it is a valid claim, plaintiff's claim fails for the same reasons it fails under Title VII.

5

alter the conditions of the victim's employment and create an abusive working environment[.]' " *Id*. at 97 n.8 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted)); *see also Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (stating that the conduct "must be extreme to amount to a change in the terms and conditions of employment"). Courts should consider all the circumstances, including the " 'frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance.' " *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23). Not all abusive behavior creates a hostile work environment; the hostile work environment must be the result of discrimination based on a protected status. *Roberson*, 404 F. Supp. 2d at 97.

The events giving rise to plaintiff's claims – either in isolation or collectively – are insufficient to establish a hostile work environment.[4] Plaintiff claims that as a Public Affairs Assistant, she handled mailing lists, produced news articles and prepared press releases, but those responsibilities ceased when she was reassigned to the Administrative Assistant position. Def.'s Mot. to Dismiss, Ex. 6 ("Pl.'s Aff.") ¶¶ 7-8. Plaintiff's job reassignment, however, was neither severe nor abusive. In a similar Title VII action where "the majority of [the plaintiff's] allegations of a hostile work environment concern[ed] the fact that her job responsibilities were continually changed and downgraded, and that she was not treated like a professional in that she was asked to do tasks below her job title, asked to sit in the reception area, and told how to organize her desk," the court found that those "complaints over undesirable job responsibilities

---

[4] Defendant correctly argues that the memo identifying plaintiff as one of 25 employees "that may be impacted by the upcoming A-76 Study," Def.'s Mot. to Dismiss, Ex. 14, does not support plaintiff's harassment claim because it "has not affected any employees . . . other than [that] their positions were listed" and "had nothing to do" with plaintiff's job reassignment. Def.'s Mot. to Dismiss, Ex. 7 ("Crutchfield Aff.") ¶¶ 4-5.

and office arrangements do not support a hostile work environment cause of action." *Hussain v. Gutierrez*, 593 F. Supp. 2d 1, 7 (D.D.C. 2008) (citing cases). Nothing in this record requires a different conclusion here.

More fundamentally, there is no evidence in this case from which a reasonable jury could find or infer that defendant acted with unlawful discriminatory intent. *See Houston v. Sectek, Inc.*, Civil Action No. 04-2218 (RWR), 2010 WL 322251, at * 7 (D.D.C., Jan. 28, 2010) ("Houston neither alleges that Czeck made any racially based comments nor factually demonstrates how race motivated Czeck's behavior."). To the contrary, defendant has sufficiently shown that the challenged conduct – including Crutchfield's inquiries about plaintiff's retirement plans – was motivated by the agency's restructuring and the elimination of not only plaintiff's position of Public Affairs Assistant but of the entire Public Affairs office, and with the legitimate aim of maintaining plaintiff's employment with the agency at the same grade and pay. *See* Def.'s Mot. to Dismiss, Ex. 7 ("Crutchfield Aff.") ¶¶ 5-6, 9-10, 12; Pl.'s Aff. ¶ 5 (stating that as a result of the elimination of her office, she was offered "the choice of accepting a GS-7 position of either secretary or administrative assistant in Washington, D.C. or in Atlanta" and that she chose the former location).[5]

As for the training requests, the record demonstrates that between 1987 and 2005, plaintiff received 367 hours of training relevant to her job duties, including writing and proofreading courses. Def.'s Mot. to Dismiss, Ex. 25. Plaintiff was told that her requests for

---

[5] Plaintiff states that Crutchfield "talked with me about retirement on November 8, 2005. . . and on another couple of occasions." Pl.'s Aff. ¶ 9. Crutchfield states that in light of the elimination of the office, he "talked with everyone about other plans such as other jobs or retirement," and "did not single [plaintiff] out in any way . . . and there was no intention to force her to leave." Crutchfield Aff. ¶ 10. No reasonable jury could infer harassment from such testimony.

training "in areas such as desk top publishing and other computer software courses" were denied "because of the budget." Pl.'s Aff. ¶ 6. Plaintiff has not offered any evidence that contradicts defendant's legitimate non-discriminatory reason for denying her requests for additional training, and she admits that she was "allowed to consider e-learning opportunities." *Id*. ¶ 6. Moreover, while plaintiff claims that "[o]thers in the office received training," *id*., she does not state or even suggest that those other employees were similarly situated to her but treated more favorably because of their race, age or gender.

## B. Retaliation

"Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination," *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citations omitted), and "[t]he test for determining retaliation under the ADEA and Title VII is identical." *Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) (citation omitted). To establish a successful claim of retaliation, a plaintiff must initially show "that (1) [s]he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action." *Baloch v. Norton*, 517 F. Supp. 2d 345, 353-54 (D.D.C. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58 (2006)). "Statutorily protected activities include the filing of EEOC complaints and the initiation of litigation to vindicate claims of employment discrimination or retaliation." *Baloch*, 517 F. Supp. 2d at 354 (citing *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002)). "In this circuit, a hostile work environment can amount to retaliation under Title VII." *Graham v. Holder*, 657 F. Supp. 2d 210, 215 (D.D.C. 2009) (citation omitted).

Because plaintiff has failed to present any evidence from which a reasonable jury could find that she was subjected to a hostile work environment or unlawful discrimination, her retaliation claim predicated on such assertions necessarily fails.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss any unexhausted Title VII claims is granted and his motion for summary judgment as to the hostile work environment and retaliation claims is granted. A separate final, appealable Order accompanies this Memorandum Opinion.

_____/s/_____
RICHARD W. ROBERTS
DATE: March 12, 2010    United States District Judge